UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN J. NESLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15-2348-JDT-dkv |
| VS. | ) | |
| | ) | |
| CORRECTIONS CORPORATION OF | ) | |
| AMERICA, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET, DISMISSING COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On May 22, 2015, Plaintiff John J. Nesler ("Nesler"), Bureau of Prisons ("BOP") register number 21873-076, who is incarcerated at the Federal Correctional Institution I in Oakdale, Louisiana ("FCI Oakdale I"),[1] filed a *pro se* civil complaint on the form used for commencing actions pursuant to 42 U.S.C. § 1983. (ECF No. 1.) After Nesler submitted the necessary documentation, the Court issued an order on June 30, 2015, granting leave to proceed *in forma pauperis* and assessing the civil filing pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a)-(b). (ECF No. 7.) The Clerk shall record the Defendants as the Corrections Corporation of America ("CCA"),

---

[1] A document filed by Nesler in another of his cases, number 15-2349-JDT-dkv, shows that he is now confined at FCI Oakdale. (*See* No. 15-2349, ECF No. 12-1.) Therefore, the Clerk is directed to MODIFY the docket to reflect that Nesler's address is FCI Oakdale and to mail a copy of this order to Nesler at that address.

which operates the West Tennessee Detention Facility ("WTDF"), where Nesler was previously incarcerated;[2] and the U.S. Marshals Service ("USMS"). Because Nesler's claims concern the actions of persons and entities acting under color of federal law rather than state law, any constitutional claims arise under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1974), instead of 42 U.S.C. § 1983.[3]

## I. THE COMPLAINT

Nesler's complaint is somewhat incoherent,[4] but he alleges the Defendants have violated his constitutional rights and obstructed justice. (ECF No. 1 at 2.) He contends his mail has been manipulated to foul his criminal case. (*Id.*) His attorney allegedly was biased and redacted evidence of victimized children. (*Id.*) His attorney also allegedly had prior knowledge of the obstruction of justice related to a certain Hewlett Packard computer "connected to the 10-24-06 date when corrupt FBI agents arrest[ed him] to that computer 10-18-07." (*Id.*) Nesler has also filed other documents and exhibits complaining about various issues, all of which are rambling and largely incoherent. (*See* ECF Nos. 4, 8 & 11.) Nesler seeks to hold those responsible for his wrongful convictions and incarceration accountable. (ECF No. 1 at 3.)

By way of background, on October 6, 2010, Nesler entered a guilty plea in this district to one count of possessing computers containing images depicting child

---

[2] Nesler appears to name the WTDF as a separate defendant; however, claims against the WTDF are properly construed as claims against CCA.

[3] The Clerk is directed to MODIFY the docket to reflect that this is a *Bivens* action.

[4] In addition, Nesler's handwriting is very difficult to read, so that portions of his documents cannot be deciphered.

pornography and one count of receiving images depicting child pornography, in violation of 18 U.S.C. § 2252(a). *United States v. Nesler*, No. 2:07-cr-20348-JPM (W.D. Tenn.) (Order on Change of Plea, ECF No. 81). Nesler was sentenced to a 60-month term of imprisonment, to be followed by a 10-year term of supervised release. (*Id.*, Min. Entry, ECF No. 84.) He did not file a direct appeal. After Nesler was released from prison, his probation officer filed a petition on October 15, 2012, alleging Nesler had violated the terms of supervised release. (*Id.*, ECF No. 90.)

The same conduct that prompted the supervised release petition also resulted in additional criminal charges being filed in this district. *United States v. Nesler*, No. 2:12-cr-20227-STA (W.D. Tenn.) (Indictment, Sept. 27, 2012, ECF No. 6). On May 12, 2014, Nesler entered a guilty plea to one count of possessing a cell phone containing images depicting child pornography, in violation of 18 U.S.C. § 2252(a). (*Id.*, Order on Change of Plea, ECF No. 76.) On June 12, 2014, Nesler's supervised release in the earlier case was revoked, and he was sentenced to an additional 60 months of incarceration for that violation. (No. 07-20348, Min. Entry, ECF No. 147.)

Nesler's subsequent motions to withdraw his guilty plea in case number 12-20227 were denied. (No. 12-20227, ECF No. 130.) On May 26, 2015, he was sentenced to a 120-month term of imprisonment, 30 months of which is to run concurrent with the sentence imposed for the supervised release violation. (*Id.*, Min. Entry, ECF No. 132.) Both the revocation of supervised release in number 07-20348 and the conviction in 12-20227 are presently on appeal.

## II. ANALYSIS

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either

this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

The claims against the USMS, a federal agency, are considered claims against the United States. The United States can be sued only to the extent it has waived its sovereign immunity. *McGinness v. United States*, 90 F.3d 143, 145 (6th Cir. 1996). A waiver of sovereign immunity cannot be implied but must be expressed unequivocally by Congress. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Johnson v. Hubbard*, 698 F.2d 286, 290 (6th Cir. 1983); *Jahn v. Regan*, 584 F. Supp. 399, 406 (E.D. Mich. 1984). The United States has not waived sovereign immunity and, therefore, cannot be sued in a *Bivens* action. *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (stating that a *Bivens* claim cannot be asserted against the United States government or its employees in their official capacities).

The complaint also does not allege a viable claim against CCA, which operates the WTDF. The Supreme Court held in *Correctional Servs. Corp. v. Malesko*, 534 U. S. 61 (2001), that *Bivens* actions may not be maintained against corporate defendants.

Accordingly, construing the complaint under *Bivens*, Nesler fails to state a claim against Defendant CCA upon which relief may be granted.

Nesler alleges that his mail is being mishandled to foul his criminal case. (ECF No. 1 at 2.) However, this allegation does not state a valid claim for denial of Nesler's First Amendment right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The Supreme Court has held that

> "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Hadix*, 182

F.3d at 405-06 (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The complaint does not allege that Nesler suffered any such actual injury due to the mishandling of mail.[5]

To the extent Nesler may be seeking money damages for his allegedly wrongful convictions, such claims are barred by *Heck v. Humphrey*, in which the Supreme Court held:

> that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 486-87 (1994) (footnotes omitted). *See also Garrett v. United States*, 469 F. App'x 465, 466 (6th Cir. 2012) (applying *Heck* to bar claims in a *Bivens* action); *Lanier v. Bryant*, 332 F.3d 999, 1005-06 (6th Cir. 2003) (same). A plaintiff has no cause

---

[5] Moreover, to the extent Nesler may be complaining that he was hindered in his criminal cases, he has been represented by counsel at every stage of those proceedings.

8

of action under *Bivens* if the claims in the action hinge on factual proof that would call into question the validity of a court order directing his confinement unless and until any prosecution is terminated in his favor, his conviction is set aside, or the confinement is declared illegal. *Heck*, 512 U.S. at 481-82.

Here, Nesler is directly challenging the validity of his prosecution and convictions; therefore, any claims for money damages are barred by *Heck*. Nesler must have his convictions overturned on direct appeal or via collateral attack before any such claims can accrue.

For the foregoing reasons, Nesler's complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted.

### III. LEAVE TO AMEND

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103,

114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, leave to amend is not warranted because the deficiencies in Nesler's complaint cannot be cured.

## IV. CONCLUSION

The Court DISMISSES Nesler's complaint for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to amend is DENIED deficiencies in Nesler's complaint cannot be cured.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Nesler in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Nesler nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Nesler is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Nesler, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

IT IS SO ORDERED.

                                                s/ **James D. Todd**
                                                JAMES D. TODD
                                                UNITED STATES DISTRICT JUDGE